**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

LUTRICIA Y LEWIS,

Plaintiff,

v.

PARK PLUS, INC.,

Defendant.

Civil Action No. 8:13-cv-01709-AW

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lutricia Y. Lewis is a Maryland citizen who resides in Prince George's County, Maryland. Plaintiff is the widow of Albert L. Lewis, Jr., who died in a tragic workplace accident that is the genesis of this lawsuit. Plaintiff is the personal representative of Mr. Lewis's estate. For its part, Defendant is a Delaware corporation whose principal place of business is New Jersey.

The Parties dispute the extent of Defendant's contacts with the state of Maryland. Defendant asserts that it lacks continuous and systematic contacts with Maryland because: (1) it is not authorized to conduct business in Maryland; (2) it has no resident agent in Maryland; (3) it does not advertise in Maryland; (4) it does not own any real property in Maryland; and (5) it has never had an office in Maryland. In response, Plaintiff asserts that Defendant operates and

maintains a large parking facility in Towson, Maryland and has employees who live on-site. Although there is a question about whether employees live, or have lived, on-site, Defendant seems to acknowledge that it installed, and currently operates, an automated parking facility at The Palisades of Towson, which is a luxury apartment building attached to the parking facility. The Palisades of Towson is located at 212 Washington Avenue, Towson, Maryland. Plaintiff also asserts that Defendant currently maintains, or has maintained, an office in Towson at 215 Washington Street. However, according to publicly available information, there is no such address as "215 Washington Street, Towson, Maryland."[1]

In 2006, Defendant sold nonparty American Service Center Associates, LLC d/b/a America Service Center and/or Mercedes Benz of Arlington (ASC) forty Spacemaker QP1000 Electric Quad Stackers (Stackers). According to the Complaint, the Stackers are four-tier automobile car-lift stacking systems used to vertically stack and store automobiles. Plaintiff does not allege that the Stackers were manufactured or sold in Maryland. Immediately following the sale, Defendant installed the Stackers at ASC. Thereafter, Defendant and ASC allegedly entered into a contract by which Defendant assumed the responsibility to inspect, service, and maintain the Stackers.

Mr. Lewis started to work for ASC in 1995. On November 26, 2011, according to the Complaint, Mr. Lewis was working near the Stackers when one of the stacking trays on Stacker Serial Number 008909 (the Stacker) fell and struck Mr. Lewis on the head and neck and killed him.

---

[1] Plaintiff also notes that a wrongful death action has been brought in the Circuit Court for Baltimore County, Maryland against, inter alia, Defendant for the allegedly improper design, functioning, and/or maintenance of the automated parking system at the Palisades. The jurisdictional relevance of this observation is unclear.

On June 13, 2013, Plaintiff filed her Complaint. Doc. No. 1. The Complaint contains the following causes of action: wrongful death; negligence; breach of implied warranties; breach of contract; and a claim for damages under the Virginia Wrongful Death Act.

In response, Defendant filed a Motion to Dismiss. Doc. No. 4. Defendant argues that, because it lacks meaningful contacts with Maryland, the Court lacks personal jurisdiction over it. Defendant further argues that venue in the District of Maryland is improper and that the District of Virginia is a more convenient forum.

Plaintiff filed her Response on August 15, 2013. Doc. No. 10. Though seeming to recognize that the Court lacks specific jurisdiction over Defendant, Plaintiff argues that the Court has general jurisdiction over Defendant due to Defendant's operation and maintenance of the Towson parking facility and the putative office. In the alternative, Plaintiff asks the Court to order jurisdictional discovery. Defendant has replied and the matter is ripe for review.[2]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When nonresident defendants challenge the court's power to exercise personal jurisdiction over them via motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If the existence of jurisdiction turns on disputed factual questions, the court may resolve the motion on the basis of an evidentiary hearing. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, if the court rules on the motion without conducting an evidentiary hearing, "the plaintiff need only

[2] Plaintiff filed a surreply. The Court will not consider Plaintiff's surreply because Plaintiff did not have the Court's permission to file it. *See* Local Rule 105.2(a) (D. Md. 2011).

make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 667 (D. Md. 2009) (citations omitted). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst*, 334 F.3d at 396 (citation omitted).

**B. Motion to Dismiss for Improper Venue**

Parties bring motions to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(3). "Unlike a Rule 12(b)(6) motion, evidence outside the pleadings may be 'freely consider[ed]' in ruling on a Rule 12(b)(3) motion." *Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, --- F. Supp. 2d ----, Civil Action No. DKC 13–0560, 2013 WL 3895039, at *2 (D. Md. July 26, 2013) (quoting *Sucampo Pharms.*, *Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). "A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citation omitted). In assessing whether the plaintiff has made this showing, courts must "view the facts in the light most favorable to the plaintiff." *Id.* (citation omitted).

**III. LEGAL ANALYSIS**

**A. Personal Jurisdiction**

Defendant argues that the Court has neither general nor specific jurisdiction over it. In short, Defendant argues that the Court lacks specific jurisdiction over it because Mr. Lewis's death at ASC in Arlington, Virginia neither arises out of nor is related to Defendant's activities in Maryland. Plaintiff does not respond to this argument. Thus, in effect, Plaintiff has conceded that the Court lacks specific jurisdiction over Defendant. *See Hawkins v. Leggett*, --- F. Supp. 2d

----, Civil Action No. 12–cv–00623 AW, 2013 WL 3218964, at *25 n.3 (D. Md. June 24, 2013) (citation omitted); *Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (citation omitted). Furthermore, the record clearly evinces that the accident in question is not connected to Defendant's Maryland activities. Accordingly, the Court declines to address the question of specific jurisdiction further and focuses on the issue of general jurisdiction.

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state authorizes jurisdiction; and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process requirements. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland's long-arm statute is coextensive with the scope of jurisdiction that the Due Process Clause permits. *See Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Thus, the normal two-step inquiry merges into one, and courts need not address the long-arm statute issue separate from the due process inquiry. *See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

A court's exercise of jurisdiction over a nonresident defendant comports with due process only if the defendant has "minimum contacts" with the forum such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Courts have recognized two types of personal jurisdiction: general and specific. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction comes into play where the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (alteration in original) (citation and internal quotation marks omitted). By contrast,

general jurisdiction involves "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* (alteration in original) (citation and internal quotation marks omitted). "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir. 1997) (citation omitted).

The Supreme Court has recently discussed its general jurisdiction jurisprudence in the context of a corporate defendant. *See generally Brown*, 131 S. Ct. 2846. The *Brown* Court pronounced that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations . . . when their affiliations with the State are so continuous and systematic as to render them **essentially at home** in the forum State." 131 S. Ct. at 2851 (emphasis added) (citation omitted); *see also id.* at 2854 (emphasis added) (citation omitted) (stating that the paradigm forum for the exercise of general jurisdiction over a corporation is one where it is "**fairly regarded as at home**"). Expounding its general jurisdiction cases, the *Brown* Court indicated that a corporation would be "essentially at home" in a state where the president maintained his office and company files and from which he supervised the corporation's activities, characterizing this as the corporation's "principal . . . place of business." *See* 131 S. Ct. at 2856–57. The *Brown* Court also indicated that a corporation would not be essentially at home in a forum state in which it merely sent its chief executive officer for a contract-negotiation session; purchased helicopters, equipment, and training services for substantial sums; sent personnel for training; and accepted into its bank account checks drawn on a bank in the forum state. *See* 131 S. Ct. at 2856. Consistent with *Brown*, in recent times especially, the Fourth Circuit typically has not construed the concept of general jurisdiction liberally. *See ESAB Grp.*,

126 F.3d at 624–25 (citing cases); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) ("[B]road constructions of general jurisdiction should be generally disfavored."); *cf. Bonney v. Roelle*, No. 96-1664, 1997 WL 407831, at *7 (4th Cir. July 21, 1997) (emphasis added) (holding that the defendant "had continuous and systematic contact with Virginia by virtue of its being **headquartered** in Virginia").

In this case, Plaintiff has failed to make a prima facie showing that Defendant's contacts with Maryland are sufficiently continuous and systematic such that Defendant is essentially at home in Maryland. Although there is evidence that Defendant installed and operates a large parking facility in Towson, this is the only meaningful contact that Plaintiff has identified and it is unrelated to the cause of action. Granted, the parking facility is permanent and there is evidence from which one could infer that Defendant employs a few persons who live on-site. Yet the Court cannot distinguish this situation form one where a construction company undertakes a long construction project in Maryland and houses a handful of employees at mobile homes or office trailers on or near the worksite. Although a Maryland court's exercise of jurisdiction based on the company's construction activities might be proper in this scenario, the company would not "reasonably anticipate being haled into court" in Maryland for an accident that occurred in Virginia and is completely unrelated to its construction activities. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Nor is Plaintiff's assertion that Defendant has or had an office in Maryland consequential. Defendant's CEO, Ronald Astrup, swears in an affidavit that Defendant "does not now have, nor has it ever had, any offices in Maryland," Doc. No. 4-2 ¶ 4, and the address that Plaintiff provided for Defendant's putative office is not valid. At most, then, Plaintiff's evidence creates a plausible inference that Defendant maintains an office at the Towson parking facility. However, Plaintiff's allegations and evidence do not

indicate that this putative office was Defendant's headquarters or principal place of business. Indeed, Plaintiff alleges, and Mr. Astrup confirms, that Defendant has its "principal place of business in New Jersey." Doc. No. 1 ¶ 2; Doc. No. 4-2 ¶ 3. Nor is there any suggestion that Defendant conducts any business at the putative office other than its parking operations, let alone that this business constitutes a substantial part of Defendant's overall operations. Likewise, Plaintiff has not alleged or shown that the Towson facility accounts for a sizeable percentage of Defendant's economic activity. *Cf. Nichols*, 991 F.2d at 1200 (citation omitted) (stating that "even a large percentage of a corporation's purchases in the forum state is not sufficient to justify general jurisdiction"). On these facts, given courts' significant expansion of the scope of specific jurisdiction over the years, exercising general jurisdiction over Defendant threatens to subject corporations to personal jurisdiction wherever they do business for activity unrelated to their purpose for doing business there. *Cf. id.* This outcome would not comport with traditional notions of fair play and substantial justice and would place an undue burden on businesses. Accordingly, Plaintiff has failed to make a prima facie showing that general jurisdiction is proper.

**B. Venue**

In relevant part, the general federal venue statute provides as follows:

> (b) Venue in general.—A civil action may be brought in—
>
> ***
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

In this case, venue is improper under § 1391(b)(2) because a substantial part of the events allegedly giving rise to Plaintiff's claims did not occur in Maryland. The underlying accident happened in Virginia, and there are no allegations or facts linking it to Maryland. Likewise, venue is improper under § 1391(b)(3) because Defendant is not subject to personal jurisdiction here. Accordingly, the District of Maryland is an improper venue for this case.

**C. Jurisdictional Discovery**

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst*, 334 F.3d at 402 (citation omitted). However, "district courts have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Id.* (alterations in original) (citation and internal quotation marks omitted). Therefore, whether to allow jurisdictional discovery is committed to the sound discretion of district judges in the first instance and will not be disturbed on appeal absent an abuse of discretion. *See id.* at 402–03.

In this case, in the exercise of its sound discretion, the Court denies Plaintiff's request for jurisdictional discovery. Plaintiff's request is not insignificant, and includes an examination of, among other things: Defendant's contracts and correspondence related to its activities in Maryland; all publications in which Defendant has advertised in the past decade in Maryland; the identities of Defendant's employees in Maryland; trade or business associations of which Defendant is or has been a member; and the amount of revenue Defendant has obtained from sales and services in Maryland. *See* Doc. No. 10-1 at 8. However, it is speculative to assume that

examining this information would enable Plaintiff to make a prima facie showing that personal jurisdiction is proper. The examination will not change the fact that ASC is located in Virginia; that the underlying accident took place in Virginia; that the Stackers were not manufactured in Maryland; that the relevant actors and evidence are not located in Maryland; and that Defendant's principal place of business is New Jersey. Although the jurisdictional discovery would presumably provide more information regarding the Towson parking facility and putative office, there is no reason to infer that the additional information regarding this isolated enterprise would show that Defendant's contacts with Maryland are so continuous and systematic that one could fairly regard Maryland as its home. *Cf. Carefirst*, 334 F.3d at 402 (citation omitted) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). Accordingly, the Court declines Plaintiff's request for jurisdictional discovery.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. A separate Order follows.

December 18, 2013
Date

/s/
Alexander Williams, Jr.
United States District Judge